THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

  Plaintiff

  v.

OLLIE J. ARNOLD, III,

  Defendant.

Case No. 3:25-cr-7(1)

Judge Walter H. Rice

---

DECISION AND ENTRY OVERRULING MOTION TO SUPPRESS OF DEFENDANT OLLIE J. ARNOLD, III (DOC. #16)

---

This matter is before the Court on the Motion to Suppress of Defendant Ollie J. Arnold, III. (Doc. #16). Judge Christopher Roberts of the Dayton, Ohio, Municipal Court issued a search warrant for 827 Brooklyn Avenue in Dayton, Ohio ("Brooklyn Residence"), on January 22, 2025. (Aug. 18, 2025, Hrg. Tr., Doc .#18, PAGEID 56-57; Memo. in Opp., Doc. #22, PAGEID 86). The warrant was issued upon the information contained in the Search Warrant Affidavit of Dayton, Ohio, Police Department ("DPD") Detective Vincent Carter. (*Id.*). In the Affidavit, Carter stated that he had executed a search warrant at the Brooklyn Residence in August 2022 and, at that time, arrested Defendant. (*Id.* at PAGEID 60-61; Aff., p. 2, ¶ 4). Defendant was in federal custody from September 6, 2022, through October 17, 2024. (Doc. #16, PAGEID 38). Carter further averred that in November 2024, after

Defendant was released, he received information "from other law enforcement agencies" that Defendant was selling drugs out of the Brooklyn Residence. (Doc. #22, PAGEID 86, citing Aff., p. 2, ¶ 4). However, Defendant's federal supervised release records show him living at a different residence, with a different address. (Doc. #16, PAGEID 38).

On December 3, 2024, the DPD removed and opened two trash bags from a garbage can in the alley behind the Brooklyn Residence, both of which contained evidence of drugs and drug trafficking activity. (Doc. #22, PAGEID 86-87, citing Aff., p. 2, ¶¶ 5-6). However, Carter's Affidavit did not reflect that DPD knew who lived at the Brooklyn Residence on that date. (Doc. #16, PAGEID 38). Carter averred that, two days later, DPD performed surveillance and observed activity consistent with selling of drugs. That same day, a DPD officer then proceeded to stop and arrest a Troy White leaving the Brooklyn Residence. White informed DPD that he had bought crack cocaine at the Brooklyn Residence from a dealer using an alias, OJ, that Defendant had been known by DPD to use. (Doc. #18, PAGEID 69-70; Doc. #22, PAGEID 87-88, citing Aff., p. 2, ¶¶ 9-11). However, "[a]t no point did Troy White give law enforcement a physical description of the person, identify the person from a photograph, or provide a full name of anyone." (Doc. #16, PAGEID 38-39). Finally, on January 16, 2025, DPD performed another trash pull at the Brooklyn Residence, again finding evidence of drug activity. Additionally, one trash "bag contained mail addressed to Mr. Arnold at the Brooklyn Residence as well as two pill bottles in his name." (Doc. #22, PAGEID

2

88; *see also* Doc. #18, PAGEID 67). However, the pill bottles had Defendant's new address, the different address, listed on them; Carter did not include the different address in the Affidavit. (Doc. #16, PAGEID 39; Aff., pp. 2-3, ¶ 12).

Based on the information contained in Carter's affidavit, Judge Roberts issued the search warrant for the Brooklyn Residence on January 22, 2025. The next day, DPD officers served the warrant and found Defendant sleeping inside. They also found narcotics and paraphernalia associated with drug selling, along with a Glock weapon lying next to Defendant. (Doc. #18, PAGEID 59-60).

Based on that evidence, Defendant was indicted for possessing with intent to distribute methamphetamine out of the Brooklyn Residence, and for unlawfully possessing a firearm. (Indictment, Doc. #2, PAGEID 4-6). Defendant moved to suppress the evidence, arguing that there was not sufficient evidence in Carter's affidavit for Judge Roberts to make a probable cause finding to issue the warrant. (Doc. #16, PAGEID 41). Specifically, Defendant asserts that: (1) the Affidavit was based on hearsay from an unreliable informant, White; (2) DPD made no efforts to verify White's information; and (3) the Affidavit failed to establish a nexus between the Brooklyn Residence and Defendant's alleged criminal activity. (*Id.*). Accordingly, Defendant claims that the search violated the Fourth Amendment, and all evidence from the search itself and evidence deriving from the search must be suppressed. (*Id.*, citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

Plaintiff United States of America ("Government") responds that the Motion is unavailing for three reasons:

(1) As a transient visitor who was primarily at the Brooklyn Residence to engage in dealing drugs, Defendant did not have a reasonable expectation of privacy inside the Brooklyn Residence (Doc. #22, PAGEID 89-90, citing *United States v. Berryhill*, 352 F.3d 315, 317 (6th Cir. 2003); *United States v. Harris*, 255 F.3d 288, 295 (6th Cir. 2001); *United States v. Pollard*, 215 F.3d 643 (6th Cir. 2000));

(2) Judge Roberts had a substantial basis for his probable cause determination, which is to be afforded wide deference, because: (a) numerous facts within the four corners of the Affidavit corroborated White's statements, and permitted the inference that White's statements were credible; and (b) those facts provided a substantial, independent basis for Judge Roberts concluding that Defendant was engaged in drug trafficking activity at the Brooklyn Residence (*Id.* at PAGEID 91-92, 93-96, citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Sanders*, 106 F.455, 463 (6th Cir. 2024) (*en banc*); *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017); *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005); *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003)); and

(3) Even if the warrant lacked probable cause, that there existed some link between known drug activity and the Brooklyn Residence means that DPD officers would not have reasonably known that the warrant and consequent search were illegal. Thus, DPD's reliance on the warrant was objectively reasonable, and the good-faith exception precludes suppression. (*Id.* at PAGEID 96-98, citing *United States v. Leon*, 468 U.S. 897, 909 (1984); *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir. 2004) (*en banc*)).

In Reply, Defendant argues that he still had a reasonable expectation of privacy in the Brooklyn Residence as an overnight guest. (Doc. #25, PAGEID 112, citing *Minnesota v. Olson*, 495 U.S. 91, 96-99 (1990)). Specifically, Defendant notes that it is undisputed that: he had lived previously at the Brooklyn Residence; in December 2024, Carter had seen Defendant exiting the Brooklyn Residence; in the January 2025 trash pull, DPD officers found Defendants' personal effects; and Defendant was found asleep at the Brooklyn Residence when the warrant was executed. (*Id.* at PAGEID 112-13, citing Aff., pp. 2, 3, ¶¶ 4, 7-8, 12). Defendant asserts that the warrant lacked probable cause because it relied heavily on the statements of a previously-unknown informant, White, and DPD did not provide corroboration of White's statements. Moreover, unlike in *Sanders*, there were no controlled buys at the Brooklyn Residence; nor did Carter ever specifically observe drug dealing there. (*Id.* at PAGEID 113-14, citing *Sanders*, 106 F.4th at 464 (6th Cir. 2024); Aff., p. 2, ¶¶ 4-6, 9). Finally, Defendant claims that the good faith exception does not apply. Rather, he argues that Carter both relied upon White's uncorroborated statements and withheld information unhelpful to the Government in his affidavit (*e.g.*, not disclosing Defendant's new, different address) so that Judge Roberts would make a probable cause determination based on an incomplete and misleading set of facts. Consequently, Defendant concludes, Carter could not have reasonably believed that Judge Roberts properly issued the warrant. (*Id.* at PAGEID 114-15, citing *Leon*, 468 U.S. at 923; *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996)).

5

The matter is now ripe for decision.

I.  **Legal Standard**

The Fourth Amendment to the United States Constitution provides that: "The right of the people . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AM. IV. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987).

A defendant whose person or property was seized in the execution of a search warrant may have the seized evidence suppressed upon demonstrating that: (1) he had a reasonable expectation of privacy in the location where the warrant was executed and, thus, has standing; (2) the issuing judge erred in concluding that probable cause existed when he issued the warrant; and (3) the executing officer should have reasonably known that probable cause did not exist—and, thus, the *Leon* good-faith exception does not apply. To meet the first element, "the defendant must show (1) that he had a subjective expectation of privacy, and (2) his expectation was objectively reasonable . . . one that society is prepared to recognize as legitimate." *United States v. Washington*, 573 F.3d 279, 282-83 (6th Cir. 2009) (internal quotation marks and citation omitted). As to the second element, "[t]he standard of review for the sufficiency of an affidavit 'is

6

whether'" under the totality of the circumstances, "'the [judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Greene,* 250 F.3d 471, 478 (6th Cir.2001) (quoting *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991)). Finally, to avoid application of the good-faith exception, the defendant must show that the officer had "no reasonable grounds for believing that the warrant was properly issued." *Leon,* 468 U.S. at 923. "Thus, an officer would not 'manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Carpenter,* 360 F.3d at 596, quoting *Leon,* 468 U.S. at 923.

## II. Analysis

### A. Reasonable Expectation of Privacy

The Government relies heavily on Defendant's statements at the evidentiary hearing that he was primarily connected to a residence at 4110 Midway Street, and that pill bottles were found listing his address as 4110 Midway were found in the Brooklyn Residence trash, for its position that Defendant has failed to demonstrate his subjective expectation of privacy in the Brooklyn Residence. (Doc. #22, PAGEID 90-91, citing Doc. #18, PAGEID 67). This evidence, however, is outweighed by the facts that Defendant still received mail at the Brooklyn Residence, had been observed talking on the phone at the Brooklyn Residence in December 2024, and was sleeping there overnight when the warrant was

executed. (Doc. #25, PAGEID 112-13, citing Doc. #18, PAGEID 60; Aff., p. 2, ¶ 7).

Thus, Defendant has met the subjective belief prong.

As to the objective reasonableness prong:

> The Sixth Circuit has generously construed the Fourth Amendment as protecting nearly all overnight guests, even when the guest occupies a common area in the apartment that is not private from other residents. In certain cases, this circuit has even extended standing to challenge a search to non-overnight guests who are permitted to keep items in the residence.

*Washington*, 573 F.3d at 283, citing *United States v. Waller*, 5426 F.3d 838, 844 (6th Cir. 2005); *United States v. Pollard*, 215 F.3d 643, 647-48 (6th Cir. 2000). Defendant sleeping in the Brooklyn Residence, and Carter having previously observed him on the premises, demonstrate that he was a guest at the Brooklyn Residence with an objectively reasonable expectation of privacy.

### B. Probable Cause

Defendant argues that Carter's Affidavit was an insufficient basis upon which Judge Roberts could reasonably rely to "determine that probable cause existed to search the residence." (Post-Hrg. Memo., Doc. #27, PAGEID 120). Defendant raises several arguments; the Court considers them in turn.

1. <u>Carter's past knowledge about Defendant at Brooklyn Residence</u>: While Carter averred in the affidavit that he had prior knowledge of Defendant living at the Brooklyn Residence, he admitted at the hearing he knew this from arresting Defendant at the Brooklyn Residence in August 2022, and had no knowledge that Defendant had been incarcerated for most of the time in the

8

interim. (Doc. #18, PAGEID 60-61; Doc. #27, PAGEID 120-21; Aff., p. 2, ¶ 4). Notably, the Government does not rely on this information in its argument that probable cause existed (Doc. #22, PAGEID 91-96), and, as discussed below, Judge Roberts did not examine that statement in a vacuum.

2. <u>Knowledge of drug trafficking at Brooklyn Residence</u>: Carter testified that DPD relayed to him "information of ongoing drug trafficking coming from that" Brooklyn Residence that DPD had received in November 2024 "from a different law enforcement agency[.]" (Doc. #18, PAGEID 55; Aff., p. 2, ¶ 4). From that information, DPD surveilled the Brooklyn Residence, and Carter observed both Defendant exiting the Residence and what Carter reasonably surmised, from his experience as a narcotics officer, was drug-dealing activity. (Doc. #18, PAGEID 54-55; Aff., p. 2, ¶¶ 6-7).

3. <u>Statements of White</u>: DPD officers observed the Brooklyn Residence and saw numerous individuals entering and leaving after only a short time, behavior consistent with drug trafficking activity. *Perry*, 864 F.3d at 415. After being detained and arrested just outside the Brooklyn Residence for possession of crack cocaine, White informed the arresting DPD officer that he had purchased the drugs from the Brooklyn Residence from a man named "OJ." (Doc. #18, PAGEID 70). Defendant correctly notes that White had no history as an informant to the DPD and that "[n]o 'controlled buys' had occurred at that residence[.]" (Doc. #25, PAGEID 114). However, Carter's search of DPD records revealed that Defendant had a history of using OJ as an alias. (Doc. #22, PAGEID 88, citing Aff., p. 2, ¶ 11).

9

Carter's cross-referencing White's statement against the DPD database gave him a reasonable basis to rely upon White's statement. Both White's identification of OJ and Carter's confirmation were included in the affidavit, meaning that Carter provided corroboration of White's statement. Moreover, Judge Roberts could rely upon that corroboration in finding White credible and using White's statement that he bought drugs from OJ to support his conclusion that probable cause existed.

4. <u>Trash Pulls</u>: DPD's December 3, 2024, trash pull at the Brooklyn Residence yielded a significant amount of drug paraphernalia (Aff., p. 2, ¶ 5), which "establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *United States v. Abernathy*, 843 F.3d 243, 251-52 (6th Cir. 2016)). Such involvement was further established by White's statement identifying Defendant (by his alias) as the seller, DPD's observation of likely drug activity, and the January 16, 2025, trash pull, which revealed a piece of mail addressed to the Defendant at the Brooklyn Residence and a bottle of pills bearing Defendant's name. (Doc. #22, PAGEID 95; Aff., p. 2, ¶ 11).

Because all of this information was contained in the four corners of Carter's affidavit, Judge Roberts had more than enough valid evidence of a nexus between the Brooklyn Residence and Defendant participating in drug trafficking. Accordingly, probable cause existed for Judge Roberts's issuance of the warrant,

10

Defendant has not demonstrated a Fourth Amendment violation, and the Motion must be overruled.

### C. Good-Faith Exception

*Leon* and its progeny establish the good-faith exception as a failsafe if it were determined later that the search warrant that law enforcement officers executed lacked probable cause. *See, e.g., Carpenter*, 360 F.3d at 595 (internal quotation marks omitted), quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (Good-faith exception requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause."). Accordingly, because probable cause existed for the issuance of the warrant, the Court need not determine whether the good-faith exception would have applied.

## III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress (Doc. #16) is OVERRULED.

IT IS SO ORDERED.

December 15, 2025

*Walter Rice*

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT